**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAKIKO KIMURA,

      Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

Case No. 1:26-cv-03337

Judge Rebecca R. Pallmeyer

Magistrate Judge Albert Berry, III

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NO. 6 DREAMTRUE
SHOP'S EXPEDITED MOTION TO MODIFY THE ASSET RESTRAINT**

The Court should deny Defendant No. 6 DreamTrue Shop's ("Defendant")[1] Motion to Modify the Asset Restraint [37] ("Defendant's Motion"). Defendant asks the Court to reduce a $301,694.65 asset restraint to $441.33 on the strength of five self-generated, unverified screenshots its operations manager produced after the freeze hit, which purport to show that its infringing activities generated only $441.33. *See* [37-2]; [37-3] ¶¶ 10–11. Yet the very same dashboard Defendant relies on reveals what the motion omits: sales of $105,339.29 between May 8 and May 18, 2026; an additional $185,822.45 in "Deferred Transactions"; and an "All Accounts" balance of $487,516.22. *See* [37-1] at 2. That falls short of Defendant's burden. To carve assets out of a freeze, Defendant must produce documentary, transaction-level proof accounting for *all* of its sales to separate infringing sales from non-infringing sales. Defendant offers no such proof. On a materially identical record, this Court refused to modify the asset freeze in *Antsy Labs., LLC v. Schedule A*, No. 21 C 3289, 2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) (Pallmeyer, J.).

---

[1] Defendant identified Huixinda (Foshan) E-commerce Co., Ltd. as the entity operating the DreamTrue Shop Amazon store. *See* [37]; [37] ¶ 3.

Plaintiff Makiko Kimura ("Kimura" or "Plaintiff") owns United States Copyright Reg. No. VA 2-414-672, which protects her "Cute Snowman" work that the Defendant infringed:

| Plaintiff's "Cute Snowman" Work (the "Makiko Kimura Work") | Defendant No. 6 DreamTrue Shop's Infringing Product |
|---|---|
| | |

See **Exhibit 1** (Evidence of Infringement).

Plaintiff reserved her election of the remedies available under 17 U.S.C. § 504, including an equitable accounting of Defendant's profits under § 504(b), which the asset freeze exists to secure. *See* [1] at 7–8. Defendant's Motion fails to meet the settled standard governing modification of asset restraints in this District. To exempt assets from an asset freeze, the burden is on the defendant "to present documentary proof that particular assets are not the proceeds of [infringing] activities," *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015)—that is, to produce "something that shows the Court that the universe of potential [infringing] profits is less than what is currently frozen," *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, 2020 WL 8260381, at *5 (N.D. Ill. July 20, 2020). And "[w]here there is a commingling of gains, [the defendant] must abide [by] the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940). This Court applied that very standard in *Antsy Labs*, declining to modify an asset freeze where the defendant's self-generated records could not separate infringing proceeds from non-infringing ones and lacked any third-party verification. 2022 WL 17176498, at *4–5. Defendant's curated screenshot evidence for a single infringing listing does not come close to satisfying this burden.

2

The Copyright Act entitles Plaintiff to a full accounting of *all* of Defendant's sales activities – not solely the single accused product discovered by Plaintiff, and is not capped at the $301,694.65 currently frozen. The relevant "universe" more likely spans Defendant's entire "All Accounts" balance of $487,516.22, along with any other marketplace accounts through which it sold infringing products. Absent a complete transaction log with pictures showing all product sales making up the $487,516.22 "All Accounts" balance, and proof that Defendant's Amazon store is in fact Defendant's only sales channel, Defendant cannot carry its burden of proving that the full universe of its infringing activities is less than what is currently frozen. Because the present record cannot support a modification of the asset restraint, the Court should deny Defendant's Motion.

Alternatively, when courts have confronted similarly incomplete and contested evidentiary showings on a motion to modify an asset restraint, they have consistently allowed plaintiffs to take targeted discovery before entertaining any modification. *See Antsy Labs.*, 2022 WL 17176498, at *5 (denying modification "without prejudice" and declining to reconsider the freeze until the defendant supplied "more reliable records"); *see also Skechers U.S.A., Inc. II v. The P'ships et al.*, No. 24-cv-07333, Dkt. 144 (N.D. Ill. Dec. 10, 2025) (Valderrama, J.) (**Exhibit 2**); *Skechers U.S.A., Inc. II v. The P'ships et al.*, No. 24-cv-04541, Dkt. 168 (N.D. Ill. Dec. 13, 2024) (Durkin, J.) (**Exhibit 3**) ("[p]laintiff is entitled to collect limited and expedited discovery relevant to the issues in [the motion to modify the asset restraint.]"); *Skechers U.S.A., Inc. II v. The P'ships et al.,* No. 24-cv-00596, Dkt. 93 (N.D. Ill. June 25, 2024) (Daniel, J.) (**Exhibit 4**) (staying the defendant's motion to modify the asset restraint "to allow the parties to obtain any discovery necessary to respond to [the motion]."). Therefore, should the Court be inclined to entertain any modification, it should first grant Plaintiff leave to take targeted discovery to test Defendant's evidence and uncover the full scope of its infringing sales.

**BACKGROUND**

On March 26, 2026, Kimura filed this copyright infringement action against Defendants who infringed the Makiko Kimura Work, including Defendant No. 6 DreamTrue Shop. *See* [1]; [1-1]. The Complaint alleges willful infringement by each defendant and reserves Kimura's election of remedies, including an equitable accounting of profits under 17 U.S.C. § 504(b). *See* [1] at 7–8. On April 8, 2026, this Court entered a sealed Temporary Restraining Order ("TRO"), which included an asset-restraint provision directing that Defendants "shall not transfer or dispose of any money or other of Defendants' assets in any of Defendants' financial accounts." [19] ¶ 2. On April 16, 2026, this Court converted the TRO into a Preliminary Injunction. *See* [27]. The Court entered both orders after reviewing screenshot evidence of each defendant's infringing storefront and shipping availability to Illinois. *See* [16]; [27] at 1–2.

**A. Defendant's Account and the Operative Freeze.**

Defendant is an Amazon storefront operated by a Chinese e-commerce company. [37-3] ¶ 3. Amazon, acting pursuant to the Court's asset-restraint orders, froze Defendant's Amazon account. Defendant's Exhibit A reports the following figures as of the filing date: Standard Orders, Total Balance: $301,694.65 (described on the dashboard as "Account Level Reserve"); Deferred Transactions: $185,822.45; All Accounts: $487,516.22; Sales (May 8, 2026 – Present): $105,339.29; and Beginning Balance (May 8, 2026): $236,204.42. *See* [37-1] at 2. Defendant's motion acknowledges only the first of those figures and omits mention of the rest. *See* [37] at 2, 6.

**B. Defendant's Appearance and the Present Motion.**

Defendant appeared on May 6, 2026, through Texas-licensed counsel. [28]. Defendant filed its Motion on May 18, 2026 ([37]), accompanied by a declaration from Haoying Lu (the "Lu Declaration"), the alleged Operations Manager of Defendant's Amazon store. The Motion seeks

to reduce the asset restraint from $301,694.65 to $441.33—the total Lu attributes to five accused size variants of the infringing product discovered by Plaintiff that sold between July 29, 2025, and May 6, 2026. *See* [37] at 5–6; [37-3] ¶¶ 9–11. The Motion attaches no official or Amazon-issued business records, no complete transaction log with pictures showing all sales, no Disbursement Detail report, no banking or payment-processor records, and no sworn submission from Amazon or any other third party. Its evidentiary record consists solely of one Amazon Seller Central account-summary screenshot ([37-1]) and five Amazon Seller Central order-history screenshots curated by Lu ([37-2]), together with Lu's three-page declaration ([37-3]). The Lu Declaration calculated the unverified sales based on its self-reported sales price between $5.89 and $7.69 ([37-3] ¶ 10), yet Plaintiff's evidence shows the infringing product sold at $12.27, before tax and shipping. *See* Exhibit 1.

### C. Conferral.

Counsel for Defendant notified Kimura that Defendant intended to file the present Motion. Kimura timely communicated that the Motion would be opposed. Defendant nonetheless filed the Motion on an expedited posture, without further substantive conferral, and embedded a unilateral briefing schedule in its papers. *See* [37] at 2, 8.

<u>**ARGUMENT**</u>

I.     **DEFENDANT'S EVIDENCE FAILS TO CARRY THE BURDEN OF PROVING THE FROZEN AMOUNT IS LESS THAN THE FULL UNIVERSE OF INFRINGEMENT**

The burden falls on the Defendant to separate any non-infringing funds from the frozen amount. Defendant's screenshot evidence and the Lu Declaration come nowhere near carrying that burden—and the authorities Defendant invokes confirm the freeze rather than undermine it.

A. <u>It Is The Defendant's Burden To Prove The Frozen Amount Is Less Than The Full Universe Of Its Infringing Activities.</u>

A copyright owner plaintiff "is required to present proof only of the infringer's gross revenue," then the burden shifts to "the infringer [who] is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see also Antsy Labs*, 2022 WL 17176498, at *4 (quoting *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015)) ("To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of [infringing] activities.") (internal citations omitted).

Here, Plaintiff identifies at least $487,516.22 in sales that were facilitated through the Defendant's Amazon account, which currently has $301,694.65 restrained. *See* [37-1]. It is now the Defendant's "burden to come up with something that shows the Court that the universe of potential [infringing] profits is less than what is currently frozen," *Johnson & Johnson*, 2020 WL 8260381, at *5, and because "there is a commingling of gains, [the Defendant] must abide [by] the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon*, 309 U.S. at 406. As explained in *Johnson & Johnson*, "the ball is in [d]efendants' court – they know from whom they purchased merchandise; what they paid for it; what they sold it for; how many bank accounts they have; whether [defendant] is apt to flee to [a foreign district]; and so on." *See id.* at *5.

Applying this well-established standard, courts in this District routinely deny motions to modify asset restraints where defendants, like this Defendant, fail to provide credible, transaction-level documentary proof showing that certain funds are not the proceeds of infringing activity. *See Antsy Labs*, 2022 WL 17176498, at *4 (this Court declining to modify where the defendant's records "appear[ed] to have been created solely for this litigation" and were contradicted by other

evidence); *Johnson & Johnson*, 2020 WL 8260381, at *3 ("Where there is ambiguity, broad summary statistics cannot meet that burden."); *Luxottica USA LLC v. Schedule A*, No. 14-cv-9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (declining to modify where the defendant's sales spreadsheet was unsupported by a declaration, omitted quantities, and was contradicted by other evidence); *Neman Bros. & Assocs., Inc. v. Schedule A*, 2024 WL 5056449, at *5 (N.D. Ill. Dec. 10, 2024) (defendant must provide "specific, detailed records, supported by a sworn declaration"); *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 954 (N.D. Ill. 2019); *cf. Peanuts Worldwide LLC v. Schedule A*, No. 21-cv-05863, Dkt. 69 (N.D. Ill. Jan. 24, 2022) (modifying only after the defendant supplied a sworn corporate declaration authenticating a complete sales spreadsheet and product images showing no other listing infringed).

B.  <u>Defendant's Screenshot Evidence And Lu Declaration Do Not Carry That Burden.</u>

This Court confronted a similar evidentiary showing in *Antsy Labs* and rejected it. There, a subset of foreign Schedule A defendants moved to modify an asset freeze on the strength of their own "sales records" and a supporting declaration purporting to cap their infringing profits at $136. 2022 WL 17176498, at *4. This Court held that submission insufficient: the records "appear[ed] to have been created solely for this litigation," were uncorroborated by any third-party source, and were contradicted by other record evidence; and the defendants "provided no indication how they 'conducted [their] search, including the search parameters, or what the many "Customer SKU" numbers referenced correspond to.'" *Id.* at *4–5. Because the defendants bore "the burden to show that particular assets are not proceeds of [infringement]," the evidence they offered could not carry it. *Id.* at *4.

The evidentiary record accepted in *Peanuts Worldwide, LLC v. Yingsheji Jiatingyongpinyouxiangongsi, et al.*, No. 21-cv-05863, Dkt. 69 (N.D. Ill. Jan. 24, 2022) illustrates

the kind of showing that does justify relief – and underscores how far Defendant's falls short. In *Peanuts*, the court granted a preliminary injunction against the defendant without freezing its assets only because it found that the defendant had "provided adequate documentary proof" showing its assets were "unrelated to the infringing activity at issue." *Id.* Specifically, the defendant provided "a declaration from a corporate representative attesting to the numbers in a spreadsheet listing sales figures for all the products offered for sale by its Amazon seller account," as well as "pictures of products to demonstrate that none of the other products it offered for sale infringed Plaintiff's trademarks or copyrights." *Id.*

Here, Defendant offers no such evidence. Instead, it relies entirely on curated screenshots of one accused listing in five size variants, plus a three-page declaration from its own operations manager. [37-2]; [37-3]. It attaches no official or Amazon-issued business records, no complete transaction log with pictures showing all sales, no Disbursement Detail report, no banking or payment-processor records, and no sworn submission from Amazon or any other third party. That is not the transaction-level proof the rule demands; it is a "broad summary" that Defendant attempts to hide behind. *Johnson & Johnson*, 2020 WL 8260381, at *3. Where the *Peanuts* defendant accounted for the whole of its catalog, Defendant accounts for a sliver of one listing and asks the Court to take the rest on faith.

Significantly, Defendant's own evidence refutes the $441.33 "universe" its Motion asserts. Defendant's Amazon dashboard reports $105,339.29 in sales in a single ten-day window, a combined "All Accounts" balance of $487,516.22, and $185,822.45 in "Deferred Transactions," none of which were discussed in Defendant's Motion. *See* [37]; [37-1]. The Lu Declaration fails to identify the underlying transaction-level sales data tied to those figures and never explains how the internal investigation was conducted, what parameters or date range were used, what filters

8

were applied, or how the five size variants were drawn from the universe of Defendant's listings—and it ignores altogether the other listings and accounts through which the frozen funds accrued. That is the antithesis of the *Peanuts* declaration, which attested to sales figures for "all the products" in the seller's account. Having commingled whatever infringing and non-infringing sales exist, Defendant "must abide [by] the consequences" until it can "make a separation of the profits." *Sheldon*, 309 U.S. at 406.

The Lu Declaration also bears a date discrepancy—it recites execution on "May 18, 2026," while the signature block reads "2026 年 05 月 19 日" (May 19, 2026) ([37-3] at 3)—confirming that it was hastily assembled for this Motion from defendant-controlled data with no external check. Its own paragraph 10 misidentifies the exhibits, cross-referencing four of the five accused ASINs to the wrong screenshots ([37-3] ¶ 10; *compare* [37-2]) — a level of carelessness that confirms the figures were never checked. A self-curated, internally inconsistent declaration that the Court cannot test against any independent source or other documentary proof does not satisfy the burden of showing that the universe of Defendant's infringing profits is less than what is frozen.

C.  Neither *Roadget*, *Deckers,* Nor *Grupo Mexicano* Supports The Cap Defendant Seeks.

Defendant cites *Roadget* and quotes *Deckers* for the proposition that "if the amount of the profits is known, then the asset freeze should apply on[ly] to that specific amount, and no more." *Deckers Outdoor Corp. v. Schedule A*, No. 13 C 7621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013); *see also Roadget Business Pte. Ltd. v. Schedule A*, 735 F. Supp. 3d 981, 984 (N.D. Ill. 2024). The precondition is decisive: the amount of Defendant's infringing profits is not known. Defendant supplies no transaction-level breakdown that would let the Court "know" what portion of the frozen funds derived from any listing; its five hand-picked size variants establish only what those variants generated on its own view of the data. *Deckers* itself invited the opposite inference,

9

entering the freeze *ex parte* and noting that "[t]o the extent that the restraint might be too broad, the defendants may file challenges to the scope of the TRO by submitting evidence that some or all of the money has other sources." *Id.* Defendant has submitted no such reliable evidence.

*Grupo Mexicano* does not help Defendant either. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), held only that federal courts lack equitable authority to freeze assets in actions seeking solely money damages; it expressly preserved a court's authority to freeze assets to secure an equitable remedy. *Id.* at 324–26, 333. An accounting of an infringer's profits under § 504(b) is precisely that kind of equitable remedy, so the freeze is properly within *Grupo Mexicano*'s carve-out. And this Court has previously recognized that line: applying *Grupo Mexicano* in *Antsy Labs*, it confirmed that although courts generally cannot restrain assets before judgment, "[o]ne exception to that general rule is where a plaintiff seeks an equitable remedy—like a disgorgement of profits." 2022 WL 17176498, at *4. On this record, none of these cases helps Defendant—there is no "known" profit figure to cap, and the freeze sits squarely within the equitable-remedy authority *Grupo Mexicano* left untouched.

## II. THE EQUITIES REQUIRE MAINTAINING THE FREEZE; THE COURT SHOULD DENY THE MOTION OR STAY IT PENDING DISCOVERY

The asset freeze exists to preserve Plaintiff's ability to recover an accounting of Defendant's profits, and the equities weigh decisively against releasing it on Defendant's say-so. Defendant's hardship theory is a naked assertion its own dashboard refutes, and the disputed amount of its profits is a question discovery—not a curated screenshot—should resolve.

### A. An Asset Freeze Is Necessary To Preserve Plaintiff's Equitable Accounting and Must Be Broad Enough To Be Effective.

An asset freeze exists to "ensure that permanent equitable relief will be possible"—here, the accounting of Defendant's profits. *Lorillard Tobacco Co. v. Montrose Wholesale Candies &*

*Sundries, Inc.*, No. 03 C 4844, 2005 WL 3115892, at \*16 (N.D. Ill. Nov. 8, 2005); *see Johnson & Johnson*, 2020 WL 8260381, at \*4–5; *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014) (an accounting is an equitable action "imposing on a defendant the obligation to disclose and return profits"). Such relief "must also be broad enough to be effective," *HD Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012), especially where a defendant shows "a proclivity for unlawful conduct," *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949)).

The risk that a foreign online seller will move frozen funds beyond reach is acute, and federal circuit courts have consistently upheld the freezing of assets precisely to prevent it. *SEC v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) (noting that the asset restraint was "essential to prevent the dissipation of assets[.]"); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 194–95 (3d Cir. 1990) (recognizing that asset restraints are appropriate where the record shows defendants are likely to evade judgment by secreting assets); *Gucci Am., Inc.,* 768 F.3d at 132–33; *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1526 (S.D. Cal. 1990) (finding "a likelihood that defendants would transfer and hide assets in order to avoid a judgment"), *aff'd*, 970 F.2d 552, 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987–88 (11th Cir. 1995). Releasing the restraint in this case, on the strength of incomplete screenshot evidence without transaction-level proof separating infringing sales from non-infringing sales, would invite that very dissipation.

B. Defendant's Hardship Theory Is A Naked Assertion Rebutted By Its Own Exhibit.

A bare claim of financial hardship, unsupported by records, does not carry a defendant's burden to loosen an asset freeze. When the defendants in *Johnson & Johnson* sought modification

11

on the ground that they would "suffer irreparable harm" if the funds remained frozen, the court rejected the argument as unsupported by the record and further held that the defendants had not demonstrated that "they are likely to pay up if the freeze is lifted." *Johnson & Johnson*, 2020 WL 8260381, at *5. The rule has equal force against a declaration that recites figures but withholds the records behind them. In *Delta Technology Development LLC v. BIGJOYS*, the court declined to credit an Amazon seller's declaration that "provided no business documents or other proof to support" its claimed costs and deductions, holding that it "cannot take [the declarant] at his word." No. 24 C 2406, 2024 WL 3755929, at *3 (N.D. Ill. Aug. 12, 2024).

Here, the Lu Declaration merely offers a single conclusory paragraph asserting that, absent release, Defendant "will be in default on payment obligations to suppliers, and will not be able to pay [its] employees." [37-3] ¶ 8. Yet the declaration identifies no supplier contracts, no payroll records, no bank statements, no cash-flow projections, and no audited financials – nothing the Court could test. Defendant's hardship argument is a naked assertion having no basis in any evidentiary proof. It is Defendant's burden to substantiate its claims with "documentary proof," not conclusory assertions—the same requirement this Court enforced in *Antsy Labs* when it refused to credit the defendants' unverified submission. 2022 WL 17176498, at *4. Like the declarations rejected in *Antsy Labs.*, *Johnson & Johnson,* and *Delta Tech.*, Defendant here is asking the Court to take the declarant at his word, and that does not displace the burden Defendant bears.

Defendant's own dashboard rebuts the hardship claim. Lu attests without any evidentiary proof that "Amazon is our only sales channel" and that the restraint has "choked our cashflow." [37-3] ¶ 8. Yet the Exhibit A dashboard shows $105,339.29 in sales over the ten-day window before filing—roughly $10,500 per day—from the very account Defendant says is immobilized, plus a recent $8,000.45 payout to Defendant on April 10, 2026, which came after the TRO was

entered on April 8, 2026. *See* [19]; [37-1] at 2. Whatever the restraint's operational effect, the record Defendant itself submitted is incompatible with the distress its Lu Declaration claims.

C. <u>The Proper Course Is To Deny the Motion or Stay It Pending Discovery.</u>

Defendant's motion turns on a disputed fact—the true amount of its infringing profits—that discovery will resolve. The orderly course, therefore, is to stay the Motion or deny it without prejudice, with leave to renew the motion after the close of fact discovery, after Defendant has produced complete, third-party-verified transaction records.

That is the very course this Court charted in *Antsy Labs*, which denied a materially identical motion "without prejudice," expressed the Court's willingness to "reconsider the asset freeze if Defendants supply more reliable records," and urged the parties first to "meet and confer . . . on the scope of evidence required for the court to quantify the profits derived from sales of the infringing products." 2022 WL 17176498, at *5. Other courts in this District also adopted the same course. *See also Skechers U.S.A., Inc. II*, No. 24-cv-07333, Dkt. 144 (Exhibit 2); *Skechers U.S.A., Inc. II*, No. 24-cv-04541, Dkt. 168 (Exhibit 3) (granting the plaintiff's motion to stay and noting, in part, that "[p]laintiff is entitled to collect limited and expedited discovery relevant to the issues in [the motion to modify the asset restraint.]"); *Skechers U.S.A., Inc. II*, No. 24-cv-00596, Dkt. 93 (Exhibit 4) (granting the plaintiff's motion to stay briefing to, in part, conduct discovery related to the defendants' request to modify the asset restraint under the preliminary injunction; noting that the stay "is intended to allow the parties to obtain any discovery necessary to respond to [the motion to modify the preliminary injunction]."); *see also North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3–4 (S.D.N.Y. Mar. 30, 2006) (keeping asset freeze in place when the parties disputed the aggregate sales numbers and profit margins).

13

Until then, the existing restraint should remain in place to preserve Plaintiff's ability to obtain an equitable accounting; loosening it now, on an admittedly incomplete record, would reward the very gamesmanship the burden-shifting rule is designed to prevent. Accordingly, should the Court be inclined to entertain any modification, it should first grant Plaintiff leave to engage in fact discovery to test the veracity of Defendant's claims and evidence. In connection with this relief, this Court should deny Defendant's Motion without prejudice, allowing Defendant to refile after discovery, or stay briefing on Defendant's Motion pending completion of discovery.

## CONCLUSION

Defendant asks the Court to cut a $301,694.65 restraint down to $441.33, on the strength of untested screenshot evidence and a declaration from its own manager, even as that same dashboard shows six-figure sales in the ten days before filing, an $8,000.45 payout after the TRO was entered, and nearly half a million dollars across Defendant's accounts. The burden is on the Defendant to prove that the frozen funds are not the profits of its infringement and that the universe of those profits is less than what is frozen. It has not carried that burden. Plaintiff respectfully requests that the Court deny Defendant's motion to modify the asset restraint or, in the alternative, stay the motion and deny it without prejudice to renewal after the close of fact discovery.

DATED: June 3, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on June 3, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.


*/s/ Keith A. Vogt*
Keith A. Vogt